IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

MARVIN KNIGHT,

Petitioner,

v. CASE NO. 4:04-cv-00109-MP-AK

JAMES MCDONOUGH,[1]

Respondent.

_____________________________/

**REPORT AND RECOMMENDATION**

This matter is before the Court on Doc. 1, Petition for Writ of Habeas Corpus, by Marvin Knight. He has paid the filing fee. Respondent has filed a response, and Petitioner has filed a reply. This cause is therefore in a posture for decision. Having carefully considered the matter, the Court recommends that the petition be denied.

**BACKGROUND**

On or about April 4, 1989, the Petitioner, Marvin Knight, was found guilty of the following felony counts: Count One--attempted first degree murder, (2) Count Two--attempted manslaughter with a firearm, (3) Count Three--armed burglary of a structure, (4) Count Five--armed burglary of a conveyance, (5) Count Six--armed kidnaping, (6) Count Seven--armed trespass, (7) Count Eight--shooting into or within a building, and (8) Count Nine--shooting at or

[1]James Crosby is no longer the Secretary of the Florida Department of Corrections, and his successor, James McDonough, is hereby substituted in his stead as the proper respondent.

within an occupied vehicle. On or about April 13, 1989, Petitioner was sentenced to life imprisonment on Count One, with concurrent sentences of fifteen years and four years on Counts Two and Three; a consecutive 30-year sentence on Count Five with concurrent sentences of thirty years on Count Six, five years on Count Seven, fifteen years on Count Eight, and fifteen years on Count Nine. Doc. 10, Ex. A at 65-77. Counts One, Three, Five, and Six carried mandatory minimum three-year sentences "as the Defendant possessed a firearm." *Id*. at 68-76. The judgment plainly reflects the fact that Petitioner was being sentenced as an habitual offender and that the "requisite findings by the court are set forth in a separate order or stated on the record in open court." *Id*. Four days after sentencing, the court entered an order designating defendant as an habitual felony offender. *Id*. at 107-08. In that order, the court first found that Petitioner had previously been convicted of a felony in Florida within five years of the offenses at issue, that the previous conviction had not been set aside, and that Petitioner had not been pardoned. *Id*. at 107. The court next determined that Petitioner should be designated as an habitual felony offender "for the protection of the public." *Id*. More specifically, the court found that Petitioner's

> criminal career began as a juvenile. Commencing with thefts and other crimes against property (a probably misnomer), this Defendant has graduated into more serious crimes against persons with a willingness to use firearms if necessary to ensure success and to escape.
>
> The Defendant armed himself with a high-powered pistol and a speed loader prior to committing a commercial burglary. Upon detection by law enforcement, he (along with his co-defendant) attempted and succeeded to effectuate escape via a shootout with two deputy sheriffs along Capital Circle, a major arterial connector in Leon County, endangering the lives of the deputies and passing motorists. Mr. Knight demonstrated a reckless and callous disregard for the safety of innocent bystanders in this "gun battle."
>
> This Defendant is not amenable to non-incarcerative supervision. He has not been rehabilitated during prior sojourns to the state prison system. The public

> will only be safe while he is incarcerated. The sentence imposed along with this "habitualization" is intended to protect the public from Mr. Knight until he has reached an age where hopefully he will not be a threat to society.

*Id*. at 107-08.

The convictions and sentences were affirmed without written opinion. *Knight v. State*, 561 So.2d 1363 (Fla. Dist. Ct. App. 1990).

Petitioner subsequently filed a motion for post-conviction relief, which was denied and affirmed on appeal. *Knight v. State*, 650 So.2d 994 (Fla. Dist. Ct. App. 1995).

On May 5, 1997, Petitioner filed a second Rule 3.850 motion for post-conviction relief. Doc. 10, Ex. K at 1-22. In this proceeding, Petitioner raised the following grounds for relief:

1. The conviction for first degree murder was reversible pursuant to *State v. Gray*, 654 So. 2d 552 (Fla. 1995);

2. Petitioner was improperly sentenced as an habitual offender;

3. The sentences were departure sentences for which the court "did not enter written reasons contemporaneously," which, when coupled with the habitual enhancement, resulted in due process and double jeopardy violations;

4. The jury's failure to make a specific finding that Petitioner actually possessed the firearm, as opposed to his co-defendant, resulted in unlawful minimum mandatory sentences on four counts;

5. With the vacation of the attempted murder conviction, Petitioner must be re-sentenced ;

6. The court improperly assessed points for legal constraint.

Doc. 1 at 3a.

The trial court specifically addressed only the first claim for relief (and by inference, the fifth claim) and found it without merit. Doc. 10, Ex. K at 24-25. Petitioner appealed, and the court of appeal affirmed in part and reversed in part. *Knight v. State*, 763 So. 2d 1231 (Fla. Dist.

Ct. App. 2000). More specifically, the appellate court remanded the case for the trial court to consider whether Petitioner's sentences had been improperly enhanced by habitualizing them and then ordering some of them to run consecutively. *Knight*, 763 So.2d at 1232; *see also Hale v. State*, 630 So.2d 521, 524 (Fla. 1993). It also remanded for further consideration of Petitioner's claim that some of his sentences were improper because "the jury failed to make a specific finding that he personally possessed a firearm during the commission of the crimes." *Knight*, 763 So.2d at 1232. Finally, the court vacated the sentences for attempted first degree murder and armed kidnaping and remanded for re-sentencing since those two convictions were enhanced at a time when the offenses "did not qualify for habitual offender treatment." *Id*.

Upon remand, the court found:

> The Defendant argues the imposition of mandatory minimum sentences based upon the possession of a firearm is not supported by the record. The jury found him guilty of the crimes of attempted first degree murder, armed burglary of a structure, armed burglary of a conveyance, and armed kidnapping. Whether or not the jury found that the Defendant was in possession of a firearm at the time he committed these offenses is determined by the form of the verdict. The verdict form used for the conviction of attempted first degree murder was specifically approved in <u>Tucker v. State</u>, 726 So.2d 768 (Fla. 1999). The remaining verdicts state that the jury found Defendant guilty of the crime "While Armed With A Firearm." The Verdict Forms, therefore, satisfy the Supreme Court's requirement that the jury's verdict contain an express reference to the use of a firearm. "An enhanced sentence should be upheld if based on a jury verdict which specifically refers to the use of a firearm, either as a separate finding or by the inclusion of a reference to a firearm in identifying the specific crime for which the defendant is found guilty."

Doc. 10, Ex. J at 1-2 (citations omitted). The court continued the re-sentencing on the attempted first degree murder and armed kidnaping convictions until a later date, *see id*. at 2, but the record does not disclose the final outcome of the re-sentencing.

Petitioner did, however, appeal the ruling. *Knight v. State*, 800 So.2d 702 (Fla. Dist. Ct. App. 2001). In that appeal, Petitioner attacked the three-year mandatory minimum sentences

imposed because "the jury did not specifically find that he actually possessed a firearm during the commission of the offenses." *Id*. The court reversed the lower court and remanded with directions to vacate the mandatory minimum sentences:

> Because unlike the defendant in *Tucker* appellant was not the only individual involved in the incidents out of which the criminal charges arose, the fact that the verdict forms state that the jury found him guilty of the offenses at issue "with the use of a firearm" does not necessarily indicate that it found that he actually possessed the firearm....[U]nder these circumstances, "it is possible the jury found the defendant guilty of [the offense] with a firearm as a principal."

*Id*. (citations omitted).

On January 3, 2002, the trial court complied with the appellate court's directive and vacated the "three-year mandatory minimum sentences imposed...for possession of a firearm..." Doc. 10, Ex. O at 331. The court conducted several subsequent hearings. In the first, Petitioner appealed this re-sentencing as well, which was per curiam affirmed. *Knight v. State*, 848 So. 2d 312 (Fla. Dist. Ct. App. 2003). Petitioner' s motion for rehearing was denied on July 10, 2003. Doc. 10, Ex. BB.

On November 25, 1998, in the midst of these 3.850 proceedings, Petitioner sought habeas relief in state court. Doc. 10, Ex. CC. In that proceeding, Petitioner challenged the effectiveness of original appellate counsel. On February 3, 1999, the appellate court denied the petition on laches grounds. *Knight v. State*, 734 So. 2d 1064 (Fla. Dist. Ct. App. 1999). Petitioner appealed to the Florida Supreme Court, which dismissed review. *Knight v. State*, 729 So.2d 918 (Fla. 1999).

The instant petition ensued. Doc. 1. On this occasion, Petitioner alleges two grounds for relief: (1) that he was denied his Fifth and Fourteenth Amendment rights to be free from double jeopardy; and (2) that he was denied his Fifth and Fourteenth Amendment right to a trial by jury and due process of law. *Id*.

**DISCUSSION**

Under 28 U.S.C. § 2254, a federal court may grant habeas corpus relief only if the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under the "contrary to" clause of § 2254(d), "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "A state-court decision will certainly be contrary to...clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Williams*, 529 U.S. at 405. A state-court decision will also be contrary to clearly established Supreme Court precedent "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." *Id*. at 406.

Under the "unreasonable application" clause of § 2254(d), "a federal habeas court may

grant the writ if the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. The federal court considering a habeas petition "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 412.

Settled circuit court precedent interpreting Supreme Court decisions is not determinative of clearly established federal law. Instead, this Court must look to the specific holdings of Supreme Court cases themselves. If the Supreme Court has not issued a specific holding on the issue at hand, then the state court's decision is not contrary to or an unreasonable application of clearly established federal law. *Carey v. Musladin*, ____ U.S. ____, 127 S.Ct. 649, 654, 166 L.Ed. 2d 482 (2006).

Further, in reviewing the decision of the state court, this Court must presume that the state court's factual determinations are correct, and the petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Parker v. Head*, 244 F.3d 831, 835-36 (11th Cir. 2001).

The fact that the appellate court does not write "an opinion that explains the state court's rationale," does not detract from the deference owed to that court's decision. *Wright v. Secretary for the Department of Corrections*, 278 F.3d 1245,1255 (11th Cir. 2002). Under § 2254, the Court is to focus on the result of the state proceeding, not the reasoning underlying it, since all that is required for a state-court adjudication on the merits is a rejection of a claim on the merits, not an explanation. *Id*. at 1254-55.

1. Timeliness.

In response to the petition, Respondent first asserts that the petition is untimely because it was not filed within one year of the effective date of the AEDPA, Petitioner's original judgment of conviction having become final in 1995. In reply, Petitioner argues that his petition is timely since it attacks the re-sentencing judgment, not the original judgment, and under that circumstance, the date of finality runs from the date that the re-sentencing judgment became final. Petitioner is correct. If a habeas petition attacks only the original judgment of conviction, the statute of limitations runs from the date that the original judgment became final. If the petition attacks only the re-sentencing judgment, then the one-year time period runs from the date that the re-sentencing judgment became final. If, however, the petition attacks both the original and the re-sentencing judgments, then the time runs from the date that the re-sentencing judgment became final. *Rainey v. Secretary for Department of Corrections*, 443 F.3d 1323 (11th Cir. 2006); *Walker v. Crosby*, 341 F.3d 1240 (11th Cir. 2003).

Here, the petition attacks the re-sentencing judgment, and thus, the date of finality is no earlier than July 10, 2003, the date that rehearing was denied. *Nix v. Secretary for Dept. of Corrections*, 393 F.3d 1235 (11th Cir. 2004). The instant petition was filed on April 8, 2004, and thus is timely.

2. Merits.

In this case, Petitioner contends that when the state court failed to follow the Florida habitual offender sentencing statutes in the original proceeding, it violated his right against double jeopardy pursuant to *North Carolina v. Pearce*, 395 U.S. 711 (1969); thus, the habitualization of his sentence at re-sentencing resulted in an improper increase in his punishment. According to Petitioner, under Florida state law habitualization is a two-step process: (1) a defendant is adjudicated as an habitual offender; and (2) the trial court imposes

sentence based on recidivism. Doc. 1 at 4a. In Petitioner's view, the lower court only determined that Petitioner "qualified" to be sentenced as an habitual offender but failed to "actually impose" an habitual felony offender sentence at the original sentencing. *Id*. Because the court did not "actually impose" the habitual offender sentence until afterward and because there were no intervening circumstances warranting an increased sentence, once he was re-sentenced as an habitual offender in accordance with the appellate court's mandate, his punishment was improperly increased in violation of the Fifth and Fourteenth Amendment protection against double jeopardy. *Id.*

In response, Respondent contends that this is an issue purely of state law, and therefore, it is not a proper basis for habeas relief.

A habeas petition grounded on issues of state law provides no basis for habeas relief, as a violation of a state statute or rule of procedure is not, in itself, a violation of the federal constitution. *Engle v. Isaac*, 456 U.S. 107, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982); *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1989). This limitation on federal habeas review applies equally when a petition which truly involves only state law issues is couched in terms of alleged constitutional violations. *Branan*, 861 F.2d at 1508; *see also Johnson v. Rosemeyer*, 117 F.3d 104, 110 (3rd Cir. 1997) (errors of state law cannot be repackaged as federal errors simply by citing the United States Constitution).

While Petitioner's double jeopardy argument has its genesis in an alleged violation of state law, his constitutional attack, while factually and legally without merit, is properly before the Court. It certainly cannot be disputed that the United States Constitution prohibits a state (1) from prosecuting a defendant a second time for the same offense after either acquittal or conviction and (2) from imposing multiple punishments for the same offense. *Pearce,* 395 U.S.

at 717. However, none of those situations are at issue in this case. Excepting the habitualization on the attempted first degree murder and armed kidnaping convictions, Petitioner's habitual offender sentences were left completely intact by the appellate court despite his challenge to them. Thus, there was not an increase in sentence at the re-sentencing, but instead, a decrease, and consequently, there was not even an arguable double jeopardy violation. Indeed, even if there had been an increase in punishment after appeal, "the Double Jeopardy Clause does not require that a sentence be given a degree of finality that prevents its later increase." *United States v. DiFrancesco*, 449 U.S. 117, 137 (1980).

Petitioner's first ground for relief is therefore without merit.

In his second claim, Petitioner argues that he was denied his rights under the Fifth, Sixth, and Fourteenth Amendments to a trial by jury and due process of law when the trial court enhanced Counts One and Six, attempted first degree murder and armed kidnaping, to life felonies based upon the use of a firearm where the jury did not make a finding that Petitioner in fact possessed a firearm. Doc. 1 at 4c. This claim was not presented to the state court until the last re-sentencing. While this appears to be an *Apprendi*-type claim, and *Apprendi* had certainly been decided at the time of re-sentencing, Petitioner never mentioned *Apprendi* but instead argued the sentencing issue under state law only. Doc. 10, Ex. W. Though the State suggested to the appellate court that it look to *Apprendi* for guidance, it too focused on state law cases, principally, *State v. Overfelt*, 457 So.2d 1385 (Fla. 1984), upon which Petitioner's argument was based. In short, the *Apprendi* claim now before this Court was not exhausted in state court, as it was not "fairly presented" to that court for decision. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971); *see also Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard*).

With that said, the question becomes whether Petitioner can return to state court with his

*Apprendi* claim. Whether an alleged *Apprendi* error constitutes an "illegal sentence" which can be attacked "at any time" pursuant to Fla. R. Crim. P. 3.800(a) is a question to which the Court has not been able to get a clear answer. The Court will therefore assume that Petitioner has no avenue for relief in state court and that his *Apprendi* claim has been "technically exhausted." *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991) (claims which have not been fairly presented to state court but are defaulted from state court review are considered technically exhausted because no remedies are available for purposes of § 2254(c)). " In that situation, Petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[ ] will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

Even if the Court assumes cause for the default, Petitioner cannot show actual prejudice or a fundamental miscarriage of justice. "Failure to submit a sentencing factor to the jury, like failure to submit an element to the jury, is not structural error" which requires automatic reversal of a conviction as it does not necessarily render the criminal trial fundamentally unfair or unreliable in determining a defendant's guilt or innocence. *Washington v. Recuenco*, ____ U.S. ____, 126 S.Ct. 2546, 2251, 2253, 165 L.Ed. 2d 466 (2006). Though Petitioner repeatedly urges that he did not possess a firearm at any time during the commission of the crimes with which he was charged, the evidence at trial was to the contrary. *See, e.g.*, Doc. 10, Ex. A at 207-11, 320-22, 376-79, 389-91, and 407-08. Because Petitioner defaulted his *Apprendi* claim, and he cannot meet the requirements for overcoming that default, the claim should be dismissed.

**CONCLUSION**

In light of the foregoing, it is respectfully **RECOMMENDED** that the petition for writ of habeas corpus, Doc. 1, be **DENIED**, and this cause be **DISMISSED WITH PREJUDICE**.

**IN CHAMBERS** at Gainesville, Florida, this ***22nd*** day of March, 2007.

***s/ A. KORNBLUM***
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**